## In re John Wilson's Estate.

Incidental expenses of an administration may be allowed on the settlement of a distribution account. *Aliter*, of claims for debts due from the estate.

On a distribution account, an executor allowed to retain the amount of a balance due a co-executor, to whose account, and the auditor's report thereon, exceptions were pending. So of partial payments to distributees.

Where a trust is already created by the lunatic, the committee of his person and estate has no right to the control of the property.

An expectation as devisee of one yet living may be *settled* on marriage.

Executors were declared trustees by a will; the offices being inseparable, security can only be demanded as executor, and not as trustee.

On an appeal by Humphreys, as administrator of John Wilson, from the decree of the Orphans' Court of Montgomery, this court appointed an auditor to settle and adjust the distribution account between the executors and the parties entitled to the residue, and make distri-

2 E

bution.   From the auditor's report two of the claimants appealed.
The case was this : John Wilson, by his will, in 1825, gave his estate
among his nephews and nieces.   The share of William Wilson, one
of his nephews, he gave to his executors thereinafter named, and to a
majority of them, who might take on themselves the execution of his
will, and to the survivor in trust, to invest and apply the income to his
maintenance, with authority, at discretion, to pay him part or the whole
of the principal.   In 1845, William Wilson was found a lunatic, and
Corson appointed committee of his person and estate.   Sarah Saul-
neer, one of the nieces, by settlement, in contemplation of marriage,
with consent of her intended husband, before 1825, conveyed all her
estate, and all that she might become entitled to by devise, bequest, or
descent, in trust, for her separate use, remainder to her children.   She
died, leaving one son.   Potts was the trustee under the settlement.
Anderson took out letters on her estate.   George Wilson, who was a
legatee and executor of his uncle John, died, and Humphreys, in right
of his wife, who was a niece and executrix of John Wilson, took out
letters testamentary.   He also, as executor of George Wilson, filed an
account of the executorship of John Wilson's estate, in 1837, showing
a balance due George Wilson of $2197, from the estate of John Wil-
son ; to this exceptions were filed, which are yet undisposed of.   As
executor of John Wilson he filed an account, August 18th, 1842, which
was confirmed absolutely, by agreement, August 17th, 1844, showing
a balance in favour of the estate of $21,030.   It was with reference
to the distribution of this fund that appeal was taken to this court, and
sent to the auditor.

The auditor, assuming this balance as the fund, allowed Humphreys
a credit for various items of expenditure, on account of the estate, in
1837, 1840, 1841, and so on, up to 1845.   Deducting these from the
balance of the former account, he charged interest thereon up to the
time of the report.   From this balance he deducted the amount appear-
ing to be due the estate of George Wilson, on the account before stated.
The residue he distributed among those entitled, giving William Wil-
son's share to Thomas Humphreys, as testamentary trustee, allowing a
credit for $2133, for which a receipt by William Wilson, in 1836, was
produced, reciting this amount was paid or accounted for to him.   In
support of an objection to this, it was proved that on a previous cita-
tion to Humphreys, for the purpose of showing he was not chargeable
with the whole of this apparent balance, he produced certificates of
bank stock and receipts.   The auditor considered this immaterial, as
the fund was to remain with Humphreys.   The auditor gave Mrs.
Saulneer's share to the trustee of her son.   Humphreys, before the

auditor, stated that since the former settlement, he had received $3000, and it might be distributed here.   This was objected to, on the ground that the auditors had no jurisdiction in the matter.   Anderson, as administrator of Mrs. Saulneer and in his own right, and Corson, the committee of William the lunatic, excepted to the report.

*Fornance* and *Tilghman*, for appellants, stated there were five points raised by the exceptions.   1. The power of the auditor to allow credits under the order of the court.   2. Anderson's right as administrator of Mrs. Saulneer to receive her share.   3. The auditor's duty to ascertain the amount due to the lunatic.   4. His committee's right to such share.   5. Allowing a credit on the faith of the receipt.   There had been several settlements by G. Wilson and by Humphreys, all of which were excepted to and remain undetermined.   As a compromise, the account was confirmed in 1844, and we supposed nothing beyond this would be examined.   Nor had the auditor a right to admit this claim by G. Wilson's estate ; as to that he is a creditor, and the authority of the auditor does not extend to it, being merely to distribute an ascertained balance.   And if he was right in this, the fact that exceptions were filed, and remain undecided, took away all effect from such report of auditors, whereas it was admitted as primâ facie evidence. [*Gibson*, C. J.—After such delay I think more is put on you than merely showing you filed exceptions.   I do not know but it ought to be taken as conclusive, for it was your duty to press the exceptions and have them decided.]   It is not pretended that he has paid G. Wilson's estate ; he has not said so.   Could he claim a credit, had he been a co-executor ?   But it is plain if he has the right now, he had it in 1842, and it must have been made before the auditor then, whose report was confirmed by consent in 1844.   We desired to conform to the decisions of this court, that the accounts as to creditors and distributees should be kept separate.   [*Kennedy*, J.—We have never said that payments to legatees should not be brought into a subsequent account.]   But that balance was composed of payments to legatees, and the parties who received the money should be charged according to their respective receipts.

The credits allowed were also of payments made before the filing of the last account ; certainly it must be supposed they were considered at that time, and allowed or rejected.   They are for counsel fees, and should have been taken out of the commissions.

Humphreys was not entitled to retain as trustee for the lunatic ; the trust was a personal confidence, and he is an entire stranger.   Shaw *v.* McCameron, 11 Serg. & Rawle, 255.

*R. Hare* and *Mulvany*, for appellees.—The will directs the share of Wilson is to remain with the trustee, and the executor is created such, which virtute officii, and under the rule of this court the offices cannot be separated, Innes' est., 4 Whart. 179; Commonwealth *v*. Barnitz, 9 Watts, 253. As to Mrs. Saulneer's share, we have settled with her son, and he does not appear here. The only question is on the right of her administrator. It being a separate use for her life, her creditors have no interest in it, for she could not contract debts to charge it. Lancaster *v*. Dolan, 1 Rawle. The remainder belongs to the son at all events under the settlement.

It will be seen, the settlement recites an agreement expressly including this fund, and conveys all that was intended to be conveyed under the agreement.

*April* 4. GIBSON, C. J.—The objection to the allowance of credits in the distribution account, which might have been allowed in the administration account, would be well founded if they were claimed for debts contracted by the testator. Such could be settled according to the statute and practice only by being properly vouched, advertised, and passed by the register before confirmation by the Orphans' Court. True it is, that the practice has been to credit the expenses of administration in the administration account, and they may properly be so credited still; but where they have been omitted, it certainly is not necessary to incur the delay and expense of a new account for so small a matter. The object of publishing notice that an account, with the vouchers, is deposited in the register's office for examination, is to give notice to creditors as well as distributees; but when the creditors have been satisfied, and the residue of the estate is before the court for distribution according to the intestate laws or the will, it is enough that the parties immediately interested have an opportunity to be heard. The Orphans' Court is master of the whole subject, and the register has nothing to do with it. Formerly the incidental expenses could be allowed only in the administration account, for there was but one settlement, and the distributive shares were recoverable by action; but now, when they are recoverable by a proceeding in the Orphans' Court, it cannot produce either inconvenience or confusion to deduct them from the balance of the administration account in the first instance.

For the same reason, the auditor properly deducted from it the balance found due to the appellant's co-executor at the settlement of his separate administration account. This balance was a charge on the assets in the appellant's hands, for which he was liable, and he had

a right to retain for it.   Why then should it not be brought into the distribution account?   Because, say the appellees, exceptions taken by them to the co-executor's account are still pending.   But why have they pressed for distribution here before they have had their exceptions disposed of there?   An estate is not ripe for distribution before all charges on it have come out of it.   These exceptions have been depending for nearly ten years; and as no step has been taken in prosecution of them, the auditor might well consider them to be virtually abandoned, and treat the balance found due to the co-executor by the register as primâ facie evidence of a debt still due by the estate; the more so, because, if it were not paid out of the assets in the appellant's hands, sufficient to discharge it might not be received from the Pemberton estate.   But by instituting the present proceedings, founded as it is on an assumption that there are no out-standing claims, the appellees have precluded themselves from bringing into it their exceptions to a different account as an element of litigation.   The proper time and place to press them is at the final settlement of that account in the Orphans' Court; and they have a right, perhaps, to do so yet, but not to prevent the appellant from retaining enough to meet the event.

The auditor likewise properly took into view payments by the appellant's co-executor to the distributees, without which distribution according to the will could not be effected.   This is too plain for further remarks.

Again, Mr. Corson's demand of William Wilson's share, as his committee, was properly disregarded.   The testator devised his estate to his executors in trust, among other things, to invest the share in stock, or put it at interest, and apply the income to the lunatic's use, or pay him the whole or part of the principal at their discretion.   By what law, then, could the appointment of a committee take this trust out of the hands in which the testator had placed it, and vest it in one who can exercise no greater or other right than could, were he sane, be exercised by the lunatic himself?   The estate was devised to the trustees qua executors; and if the distinction were material, it would consequently be clear that the appellant succeeded to the trust vested in his wife by succeeding to her executorship, with which it was indivisibly joined.   But whether the appellant or his wife be the trustee, it is certain that Mr. Corson is not; and it is enough to prevent him from getting the direction of the lunatic's estate, that there is a trustee either in esse or in posse.   The testator had a right to appoint his own trustee; and if the office were vacant, the proper course would be to fill it by appointment, for which the lunatic's committee, whose busi-

ness it is to call the trustee to account, would be the most improper person that could be selected.

Finally, the auditor properly disregarded the claim of Doctor Anderson, as the administrator de bonis non of Mrs. Saulneer. By her marriage settlement, she granted to her trustee all the real and personal estate to which she was then entitled, or which she, or her husband in her right, should thereafter acquire, for her use till the solemnization of the intended marriage, and afterwards to her separate use during the coverture, with power to alien or appoint; and for want of alienation or appointment, for the use of her children the fruit of the marriage. She died without having executed the power, and left a son to whom her share has since been paid. The settlement was executed in the lifetime of the testator, and consequently before any title had vested in her; whence an argument that the settlement was inoperative. It is certain that though a contingent limitation by will, after the death of the testator, or by deed, is a legitimate subject of grant, even at law, yet the hope or expectation of succeeding to the property of another by descent or devise is not so. But it is equally certain that such an interest may be bound by a settlement in equity. The point is settled by Beckley v. Newman, and Hobson v. Trevor, 2 P. Wms. 181, as well as by other cases in which the doctrine was assumed. Indeed, it is no more than the familiar principle, that he who executes a conveyance, on valuable consideration, purporting to pass a title before it is in him, will be bound to make it good whenever he acquires it. Such a conveyance is liberally interpreted as an agreement. Mrs. Saulneer's estate, which accrued to her subsequently, was therefore bound by her settlement; and how could any part of it go to her administrator? Though she had power to part with it, she had no power to charge it; and no part of it could be claimed for her creditors if she had any. The administrator, therefore, could claim nothing but the unpaid balance of the income from the estate, and not even in a proceeding like the present. But it does not appear that there was any, and if there were, it is not the thing that the administrator is claiming. He claims the share limited to the son of Mrs. Saulneer at her death.

We therefore direct that the report of the last auditor be confirmed, and that distribution be made in accordance with it.

There is also an appeal from another order of the court, which may be disposed of here. Upon a suggestion that Mr. Humphreys was wasting the trust-estate, he was ordered to give security as executor in $5000, and other security in $5000 as trustee; and there is consequently an evident error in separating the office of executor from that of trustee.

We direct, therefore, that so much of the order as directs the appellant to give security as trustee be reversed, that the recognisance be so far discharged, and that the order be affirmed for the residue.

So decreed.