## Mosebach's Estate.

*Trusts and trustees—Income of trust fund—Payment of income in bulk—Discretion of trustees.*

The findings of an auditing judge as to the facts relating to the proper support of a minor will not be disturbed except for manifest error.

While it is the duty of a trustee to study the conditions calling for the expenditure of the trust fund and to acquaint himself with the situation of the cestui que trust, nevertheless where the facts clearly disclose that the income of the beneficiary was paid to his stepmother who used it for his support and, in so doing, exercised a proper care and supervision of the minor, the trustee will not be surcharged with the amount of money so expended.

Argued October 9, 1919. Appeal, No. 166, October T., 1919, by John Mosebach, from decree of O. C. Phila-

delphia Co., July T., 1905, No. 151, dismissing exceptions to adjudication in estate of John Mosebach, deceased. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and KELLER, JJ. Affirmed.

HENDERSON, J., filed the following opinion dismissing the exceptions:

John Mosebach died in 1904, leaving a widow and five children, of whom his son, John, then thirteen years of age, was one; three of these were children by a former wife (including John) and two were by his second wife, his widow.

[By his will the testator gave one-third of his estate to his widow, and all the rest, residue and remainder to his friend, Andrew Schimmel, Jr., in trust for his children, and he also appointed Mr. Schimmel guardian of the minors.]

The trust for John, whose account is now before us, is in the following words:

"One-fourth part or share thereof I give, devise and bequeath to my friend Andrew Schimmel, Jr., in trust for my beloved son John Mosebach, the income of which is to be used for his maintenance and support until he reaches the age of 25 years, and then his one-fourth part or share in my estate is to be paid to him for his own use and benefit absolutely forever."

To the action of the auditing judge, John has filed nine exceptions, the first six of which alleged the auditing judge erred in not surcharging the trustee with John's share of the income, which the trustee paid to his stepmother for his support during the period before he reached the age of twenty-five years. The next two exceptions allege that the auditing judge erred in not surcharging the trustee with a fair net rental value of premises No. 4431 North Eighteenth street, which belonged to the decedent and where he died, and in which the trustee permitted the widow to reside and raise the family. Another exception alleges that the widow

rented out one room in this home of the family and that
she should account to John's estate for two-fifteenths
of the value thereof, or for the sum of $57.60. The re-
maining exceptions allege error on the part of the audit-
ing judge in refusing to disallow the accountant's com-
missions.

It is evident from the terms of the will that the ac-
countant was charged with the proper support of the
minor children until each should reach the age of twen-
ty-five years. [The theory of the exceptants seems to be
that it was the duty of this trustee to have disintegrated
this home upon the death of the father, and in some un-
suggested way disposed of the custody of these minors
for their alleged greater benefit. It is true that John
was not the son of the widow, but a son by a former
marriage. She, however, stood toward him in the re-
lation of a mother and at least had occupied this relation
to the satisfaction of the father for several years prior
to his decease. We know of no principal of law which
would have required this trustee to receive these wards
into his own family: Trickett, Law of Guardians, sec-
tion 277. We agree with the auditing judge that he did
perfectly right in permitting these children to remain
with the widow, their mother and stepmother.]

It is evident that upon the death of the father his earn-
ings were no longer available for the support of the
home and the family. Thereafter, the widow struggled
to bring up the children in the way in which they had
theretofore lived, and sought to remain in the home
provided by the father in his lifetime. It was only with
the utmost effort that the widow could do this, and the
trustee and guardian cannot be called to account for
paying over to her this minor's share of the income for
his support until he should reach the age of twenty-five
years. The findings of the auditing judge as to the facts
relating to such proper support will not be disturbed
except for clear error: Patterson's Estate, 237 Pa. 24.

278, (1919).]          Opinion of Court below.

[But, regardless of the provisions of the will under which the duty of the trustee was discharged, we believe the payments to have been justified. From 1904 until 1907 the minor did nothing, being too young to be employed, and during this time the guardian paid for his support about $75 a year. After he went to work the minor turned his wages over to his stepmother, and out of these and the income received from the trustee she maintained him, paid an occasional doctor's bill, his lodge dues, provided him with pocket money and started him with a saving fund account. The minor admitted that his stepmother treated him as if he were one of her own children. (Notwithstanding that the trustee paid the mother for the support of these minors, their income from this trust estate, she was unable to make both ends meet and actually spent several hundred dollars of her own money in the effort.

The seventh exception has to do with the small amount of rental which the widow derived from subletting a room in the house, and it is alleged the minor's share of the same would amount to $57.60. But we have already seen that the income of this widow was totally inadequate for the maintenance of the home, and after spending hundreds of dollars of her own money to keep this family together we cannot see but what she did right in applying the rent from this room towards the maintenance of the home.) ]

The last two exceptions allege error in the auditing judge in refusing to surcharge the accountant with his commissions. It appears that the accountant is engaged in the real estate business and it is likely that the testator confided these trusts to him because his estate was largely composed of real estate. There was no direction in the will that the real estate should be converted, and the accountant cannot be blamed because he continued to hold that which the testator had placed in the trust.

It appears, however, that the accountant did not maintain any separate account of this trust and that the

funds of the trust were mingled with those of the accountant. It certainly was the duty of this accountant to have kept books of account of the trust and he should also have maintained a bank account devoted to the trust. [We cannot find that the accountant sought in any way to profit by these irregularities, or that he was guilty of any fraud in the handling of this trust.]

The management of real estate is not as simple as that of personalty; the transactions in reference thereto are multitudinous, and the accountant probably permitted the items relating to these pieces of real estate to go upon the books of his real estate office just as if their management had been committed to him by the decedent in his lifetime. In the first instance we can see no objection to this, but the items of this trust should, at stated intervals, have been transferred to a set of books relating solely to the trust, and the balances placed in a bank account to the credit of the trust estate. Real estate dealers, acting as fiduciaries, too frequently keep their accounts in this way. The practice is condemned and should not be followed. As this accountant is trustee for the other children he should forthwith improve his method of handling the estate.

It was claimed that the trustee had invested principal in his own name and in other than legal securities. He did not register securities in his own name, but without advice purchased coupon bonds of an issue in which he believed he had authority to invest. When he was advised of his error he took them off the hands of the estate at cost, although they had depreciated.

While the administration of this trust during all these years has been conducted with integrity, we find it necessary to condemn the mingling of the trust funds with the personal funds of the accountant; and having condemned this practice we believe this accountant should be punished. As was said by this court in Everett's Est., 19 D. R. 477:

278, (1919).]        Opinion of Court below.

"With the utmost good faith and with the belief that the money will be safe in his own account, yet a fiduciary has no right to mingle trust funds with his own, especially, as was not the case in Parker's Est., 64 Pa. 307, he is in business, and the fund is subjected thereby to the vicissitudes of their business. Moreover, by reason of combining with his own deposit account money not his own, a fictitious credit is established and maintained, and thus, indirectly, at least, the fiduciary is benefited by this use of trust funds. As was said in that case: 'It was improper and unlawful for the accountant to mix the funds of the estate to any extent with his own. However clear it may be that it was without any dishonest intention of making gain to himself, such a practice ought never to come before a court without being in some way marked with its disapprobation.'
. . . . . .

"The basis for this rule is that commissions being paid for the faithful performance of the trust, where the trust has been so administered that the fund is put in jeopardy, the trustee has failed in part of his duty, and cannot therefore be compensated. The rule, however, is not so unbending that it shall be necessary to deprive him of all compensation. It is enough if the court show in some unmistakable manner its disapprobation of his act, and punish him in some way for his negligence. If we were of the opinion that the accountant had placed this money in his bank account for the purpose of gain, we would enforce the rule in its strictest form; but, believing it was done through carelessness, or at least through a want of knowledge of its illegality, we think our disapprobation will be sufficiently expressed by reducing his commissions from five to three per cent." See also Ahl's App., 129 Pa. 26-48.

Under the facts of this estate it would not be right to deprive the accountant of all commissions; we believe he will be sufficiently punished by cutting down his commissions from five to three per cent. With this

modification, in which the auditing judge concurs, the exceptions are dismissed and the adjudication is confirmed absolutely.

*Error assigned* was the decree of the court dismissing exceptions.

*Byron Dickson*, for appellant.—The trustee was negligent in his administration of the trust: Nicholson's App., 20 Pa. 50; Pleasanton's Est., 232 Pa. 381; Partridge's Est., 241 Pa. 158; Connelly's Est., 263 Pa. 54.

*Walter T. Fahy*, and with him *Thomas A. Fahy*, for appellee.

OPINION BY ORLADY, P. J., December 10, 1919:

The decree of the orphans' court might well be affirmed for the reasons given in the opinion overruling the exceptions filed to the adjudication. While it is a well established rule but rarely departed from, that "it is the duty of a trustee to study for itself the conditions calling for the expenditures of the money and to acquaint itself with the situation of the cestui que trust, so as to be able to exercise a sound discretion in the matter of disbursements; the confidence reposed was in the judgment and discretion of the trustees and not in that of an unnamed guardian": Pleasonton's Estate, 232 Pa. 381. A trustee cannot lawfully dispense income in bulk to a third person for the benefit of a minor, as the discretion as to the amount and time of payment was vested in the trustee, and in the trustee alone: Partridge's Estate, 241 Pa. 158. Nevertheless, the facts in this case clearly show that the care and custody of this appellant were wisely considered and the duty imposed faithfully discharged by the guardian and his ward's stepmother. Her commendable anxiety to keep these five small children together under her personal care for home nurture and schooling was assented to by the guardian, and after

consultation between them it was agreed, that they should remain with Mrs. Mosebach, and their board and clothing would be provided for by the guardian out of the interests they had in the estate.   While the book-keeping between the parties was not at all technical, and possibly open to criticism, the testimony shows that the money she received for John, this appellant, averaged for the eight years about $7 a week, from which the step-mother supported him as if he were her own child, fur-nishing board, clothing, doctor's bills, occasional spend-ing money, and "put about $84 for him in the saving fund.   That this was considered fair is shown by the fact that after John became of age he continued to pay her $8 a week for his board and lodging alone.

The attention given by the trustee to the appellant while in the home of his stepmother is fully reviewed in the adjudication, and we concur in the opinion of the auditing judge, that the contention of the appellant is without merit.   The findings are fully supported by the testimony.

The assignments of error are all overruled and the decree is affirmed, at the cost of the appellant.