608

Elliott Estate.

Argued October 9, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

reargument refused December 16, 1957.

*James Gregg*, with him *Edward T. Kelley* and *Thomas L. Wentling*, for appellants.

*Frank Gaffney,* with him *James S. Crawford, III, Robert F. Pontzer* and *Thorp, Reed & Armstrong,* for appellee.

Opinion by Mr. Justice Benjamin R. Jones, November 18, 1957:

George F. Elliott, a resident of Elk County, died testate January 22, 1940. Under his last will and testament the decedent, inter alia, created a trust wherein certain assets of his estate were to be held in trust by the Colonial Trust Company of Pittsburgh (now the Fidelity Trust Company) for the benefit of his then minor children until they respectively attained the age of 28 years.

On July 27, 1953 William E. Elliott (hereinafter referred to as Elliott), a son of decedent and a beneficiary under the aforementioned trust, attained the age of 28 years and, under the terms of this trust, became entitled to payment of a one-third share of the corpus thereof.

The trustee, upon Elliott attaining the age of 28 years, prepared and filed a Third and Partial Account, together with a statement of the proposed distribution. Exceptions to this account were filed by the First National Bank in Greensburg, Pa., as Elliott's guardian, and by G. Fred Elliott, the latter Elliott's brother and a co-trustee under an inter vivos trust hereinafter referred to. The basis of these exceptions was that Elliott's income from the trust in the amount of $10,066.53 and his share of the corpus should be paid to his legally appointed guardian rather than to the trustees under the inter vivos trust hereinafter referred to.

As between Elliott's guardian and the trustees of an inter vivos trust, who is entitled to receive distribution from the decedent's testamentary trust of Elliott's share of both income and corpus?

On April 1, 1950, Elliott, 24 years old and in the military service, created in writing an inter vivos trust wherein Colonial Trust Company of Pittsburgh and his brother, G. Fred Elliott, were the named trustees. Certain provisions of this inter vivos trust must be noted: (1) while the settlor specifically conveyed to the trustees, in addition to real estate presently not involved, certain "cash on deposit or money and securities" listed on an attached schedule,[1] he also provided that the trustees "may receive any and all monies or other securities which will or may become due and payable to or distributable to the Settlor"; (2) the trust is to continue "until the trustees, relying upon adequate and competent evidence, shall determine that the settlor shall have been restored to health, and that the management of his estate shall not be a burden to him or impair his health"; (3) the trustees were given broad and extensive powers to be exercised in the administration of the trust.

On September 30, 1950—6 months subsequent to the execution of the inter vivos trust agreement—G. Fred Elliott petitioned the Court of Common Pleas of Westmoreland County for the appointment of a guardian for Elliott on the ground that he was mentally incompetent. After hearing, that Court appointed the First National Bank in Greensburg, Pa., as Elliott's guardian.

After the guardian had taken certain legal steps in an attempt to terminate the inter vivos trust,[2] the

---

[1] The schedule listed total assets of $12,112.97, consisting of $4,780.84 in cash, miscellaneous assets valued at $1,469.63 and securities then valued at $5,862.50.

[2] On October 1, 1954 the guardian petitioned the Court of Common Pleas of Westmoreland County to terminate the inter vivos trust. The corporate trustee filed preliminary· objections on the ground that jurisdiction to terminate the· trust was in the Orphans'

Colonial Trust Company (now, by merger, Fidelity Trust Company) petitioned the Court of Common Pleas of Westmoreland County to vacate and set aside the appointment of Elliott's guardian. From the discharge by the court below of the corporate trustee's petition, an appeal was taken to this Court. On April 12, 1957, in *Elliott Estate,* 388 Pa. 321, 131 A. 2d 357, we quashed the appeal upon the ground that the Fidelity Trust Company was without any standing to prosecute the appeal.

Both the First National Bank in Greensburg, as guardian, and the Fidelity Trust Company, as a co-trustee under the inter vivos trust, have appeared in the Orphans' Court of Elk County claiming Elliott's share under the testamentary trust of decedent's estate. The court below dismissed the exceptions of the guardian and G. Fred Elliott to the account and awarded Elliott's share to the trustees under the inter vivos trust. From that decree the present appeals were taken, one by the guardian and the other by G. Fred Elliott, a co-trustee under the inter vivos trust.[3]

The question at issue is neither novel nor one of first impression.

In *In re John Wilson's Estate,* 2 Pa. 325, Wilson, by will, gave his estate to his nephews and nieces, but

Court, not the Common Pleas Court. The guardian then moved to amend the petition to seek authority from the Court to terminate the trust and the Court permitted this amendment. After testimony was taken on the question whether the guardian should be instructed and empowered to seek a termination of the trust, and before any decision was rendered an attack was made on the validity of the order appointing the guardian. No determination appears of record of the guardian's request for instructions and power to terminate the trust.

[3] It is difficult to understand or reconcile the anomalous position adopted by G. Fred Elliott.

the share of William Wilson, a nephew, he gave to his executors in trust to invest and apply the income to- wards the nephew's maintenance with authority, in the executors' discretion, to pay him part or the whole of the principal. Some years later the nephew was ad- judged a lunatic and a committee appointed for him. The auditor awarded the share of the incompetent nephew to the testamentary trustee rather than to the incompetent's committee. Mr. Chief Justice GIBSON, in upholding distribution to the trustee, stated (p. 329): "The testator devised his estate to his executors in trust, among other things, to invest the share in stock, or put it at interest, and apply the income to the luna- tic's use, or pay him the whole or part of the principal at their discretion. By what law, then, could the ap- pointment of a committee take this trust out of the hands in which the testator had placed it, and vest it in one who can exercise no greater or other right than could, were he sane, be exercised by the lunatic him- self? The estate was devised to the trustees qua execu- tors; . . . . But whether the appellant or his wife be the trustee, it is certain that Mr. Corson [the commit- tee] is not; and it is enough to prevent him from get- ting the direction of the lunatic's estate, that there is a trustee either in esse or in posse . . . ."

In *Royer's Executors v. Meixel,* 19 Pa. 240, Mr. Jus- tice WOODWARD, in permitting distribution to a luna- tic's committee, distinguished the *Wilson* case on the ground that in the *Wilson* case the testator had pro- vided a trustee for the lunatic devisee, whereas in the *Royer* case the devise was directly to the lunatic and no provision had been made for a trustee.

In *Partridge's Estate,* 241 Pa. 158, 88 A. 367, the sole question was whether the net income of a trust fund was properly payable to a committee in lunacy or whether it should be retained and distributed by a

trustee. This Court, in upholding an award to the trustee, reviewed the law up to that time in the following language (pp. 162, 163) : "In Wilson's Est., 2 Pa. 325, the claim by the committee was for the principal, and the disposition of the income was not considered. In Royer v. Meixel, 19 Pa. 240, there was a devise of land to a lunatic's son, and testator directed his executors 'to take all my son George's share into their care so that he cannot dispose of it without their permission.' It was held that the income was payable to the committee of the lunatic, on the ground that no interest in the estate was vested in the executors, and no duty enjoined upon them, and that all that was given them was a mere naked authority to restrain alienation. In Rudy's App., 20 W. N. C. 241, it was provided that 'the said trustee shall keep, support and maintain out of said trust fund my said daughter Fianna, until married,' etc. Mr. Justice STERRETT there said that to require the trustee to pay the income to the committee of the lunatic 'would deprive him of the only means he has of performing the active duties of the trust as contemplated by the testatrix.' In Pleasonton's Est., 232 Pa. 381, the legacy was for the benefit of a minor, not of a lunatic, and the trustee was directed to 'apply the same or as much thereof as shall be needed for the support, maintenance and education of my greatniece.' It was held that the duty of the trustee was to expend the income for the benefit of the minor, and that duty was not performed by paying it over to the guardian of her estate. *The general rule followed in the cases cited seems to be, that where by the terms of the trust the income is payable to the beneficiary without any duty upon the part of the trustee to see to its application, or any discretion in him to determine the amounts or manner of payments, it will go to the committee in lunacy. But where discretion as to the payment of the*

*income is given to the trustee, or where he is directed to see to its application, the trustee should retain and disburse the income, and should not pay it to the committee."* (Emphasis supplied).

This rule was reiterated in *Kipp's Estate,* 286 Pa. 90, 95, 132 A. 822, in the following language: "Under such circumstances, where positive duties are to be performed, the fund must remain in the hands of the one named in the will to whom direction has been given to expend, and will not be transferred to a guardian, or, in case of lunacy, to a committee. The contrary is true if the obligations imposed are merely passive: Earp's Est., 2 Pars. 178; Royer v. Meixel, 19 Pa. 240." See also: *Barnett's Appeal in Bell's Estate,* 46 Pa. 392, 404; *Mosebach's Estate,* 73 Pa. Superior Ct. 278, 284; *Jones v. Dunlap,* 128 F. 2d 763; *Hallinan v. Hearst et al.,* 133 Cal. 645, 66 P. 17.

While it is true that these decisions involved conflicting claims of testamentary trustees and incompetent's committees, yet the same rule should be applied to conflicting claims of trustees under an inter vivos trust and an incompetent's guardian. In those decisions the creator of the trust provided how and to whom the trust interest was payable; in the instant situation the cestui que trust had provided how and to whom his trust interest was payable. Logic and common sense dictate that the same rule should prevail in both situations.

An examination of the terms of Elliott's inter vivos trust leads irresistably to the conclusion that Elliott's share both in the income and corpus of decedent's testamentary trust is distributable to the inter vivos trustees rather than to the guardian.

The terms of the inter vivos trust impose upon the trustees active duties. Under the trust agreement, inter alia, the trustees are empowered to invest and re-

invest settlor's funds without restriction to legal investments and without the necessity of application to a court to do so, to pay to settlor not only income but principal if in the trustees' judgment settlor's needs require such payment, to sell and transfer assets, to substitute a successor for either trustee who may be unable to act for a six month period, and to terminate this trust in the exercise of their judgment. In view of the active duties imposed upon the trustees under the inter vivos trust, distribution should be made to them rather than to the guardian.

Appellants argue that the subject matter or res of the inter vivos trust consists only of Elliott's assets as listed in detail on the schedule annexed to the trust agreement and, consequently, cannot include the share in the trust in question since it is not so listed. This argument completely overlooks the fact that the trust agreement empowers the trustee "to receive any and all monies or other securities which will or may become due and payable to or distributable to the Settlor." The trust res consists not only of the assets described in the annexed schedule but also of other assets—monies or other securities—which "will or may become due and payable to or distributable to the Settlor." When Elliott executed this trust agreement he certainly knew of his interest under the testamentary trust created by his late father ten years prior to that time. Particularly significant in ascertaining Elliott's intent is the use of the word "distributable." To "distribute" means to divide among several or many (*Duffield v. Morris*, 8 W. & S. 349; *Knerr's Estate*, 130 Pa. Superior Ct. 383, 197 A. 528) and the word "distributable" is most apt in describing that which takes place in the award of property in a decedent's estate by the Orphans' Court. It is abundantly clear that Elliott intended that his trustees receive and manage his share

both in the income and the corpus of the testamentary trust of his late father.

The result of awarding the income and corpus of the testamentary trust to the trustees rather than the guardian is not only in accordance with well-established rules of law but is both practical and logical. The comment of the court below in this respect is particularly apt: "In this case the guardian would have to petition the court for permission to do the other things the trustee is already empowered to do. The trustee has had several years experience in caring for the needs and attending to the business affairs of settlor. Undoubtedly the trustees are better qualified, because of their experience in handling the affairs of the settlor and of the powers given them under the trust agreement, to administer the estate than the guardian, and administration by the trustees would result in a saving to the incompetent's estate. It appears to this court that it would be inequitable and unduly expensive to award the assets in question to the guardian as it would result in unnecessary court costs, attorney's fees and probably a duplication of commissions."

Unfortunately, in the course of its discussion the court below stated: "The question before the court . . . is whether the [inter vivos] trust . . . shall be continued and all amounts payable or distributable to William E. Elliott paid to [the trustees] or, the trust terminated and all amounts payable or distributable to William E. Elliott paid to [the guardians]." The issue before the court below did not involve the question of termination of the inter vivos trust[4] but simply a

4 It is highly questionable whether the Orphans' Court of Elks County would have jurisdiction of an action to terminate this trust, particularly since an action to terminate this trust had been instituted in the Common Pleas Court of Westmoreland County. See:

question of distribution between the trustees under an assumedly valid trust and the guardians of the incompetent. Whether or not the guardian would have the authority to terminate this trust was not at issue and, even if it did have such authority, it would not follow that such authority per se would entitle the guardian to distribution while the trust remained in effect. Suffice it to say that the validity of the trust was not and could not have been attacked in the proceedings in the court below.

We cannot fail to note that this mental incompetent's assets have been the subject of considerable litigation. At least three legal proceedings have been instituted, two of which have reached our Court, all involving a dispute as to management of the incompetent's assets. Whatever may be the motives which induced such litigation it is time that some consideration be given to the preservation of the incompetent's assets rather than their dissipation through costs and other expenses incident to litigation.

In view of the conclusion which we have reached—that the trustees rather than the guardian are entitled to receive distribution of Elliott's interest in the testamentary trust of his late father—we need not pass upon the right of G. Fred Elliott to prosecute his appeal.

Decree affirmed. Costs are to be divided between the appellants with the direction that none of the costs shall be paid by the guardian out of funds of the incompetent's estate.

---

Orphans' Court Act of August 10, 1951, P. L. 1163, art. III, §301(3), as amended, 20 PS §2080.301(3).