**Fearon Estate**

Before Klein, Adm. J., Bolger, Saylor and Shoyer, JJ.

ADJUDICATION

KLEIN, Adm. J., March 18, 1970.—The reason for filing the present account is to obtain an interpretation by this court of item fifteenth of testatrix' will, which reads as follows:

"FIFTEENTH: My Trustees may pay, expend, use and apply the income (notwithstanding any other provision in this Will to the contrary) to which any beneficiary under this Will may at any time be entitled for the maintenance and support of such beneficiary during such period or periods as such beneficiary, by reason of old age, illness, or any other cause whatsoever, shall be incapable of properly receipting for, receiving or disbursing the income to which he may from time to time be entitled, without necessity on the part of my Trustees of applying to any Court for leave to pay, expend, use and apply said income as aforesaid and without the intervention of a guardian. My Trustees shall be the sole judges of such incapacity and the receipt of the person or persons to whom such payments shall be made during such incapacity shall constitute a full and complete discharge of my said Trustees."

One of the income beneficiaries of this trust, which was created under item twelfth (b) of the will, is George A. Hogue, who was born February 18, 1904. He was declared to be an incompetent by decree of the Court of Common Pleas No. 2 of Philadelphia County dated January 9, 1931, and his brother Robert was appointed guardian of his estate. Robert died on October 10, 1966, and by decree dated January 16, 1967, by the same court, Edward G. Mekel, Esq. was appointed substituted guardian. Testatrix died July 12, 1966.

The question in this case arises because Mr. Mekel takes the position his ward's share of the income from the trust should be paid to him as guardian, while the incompetent's brother and sister assert the trustees should apply that share by direct payment, for maintenance and support of the incompetent, to the Institute of the Pennsylvania Hospital, where he has been a

patient for almost 40 years. The incompetent's share of income from this trust is estimated to be approximately $6,300 a year.

In the statement of proposed distribution, accountants state:

"There are six other sources of income available for the benefit of the incompetent, and because of the complexities arising from this multiplicity of sources of income, the difficulty of determining which fund shall be primarily responsible for the expenses of maintaining the incompetent, the necessity of filing tax returns, payment of taxes, etc., the accountants suggest that the incompetent's share of income under Item TWELFTH (b) of the Will should be awarded to the guardian of his estate."

Mr. Mekel argues that the trustees have exercised the discretion given them in item fifteenth of the will in favor of distributing the incompetent's share of income to the guardian of his estate, that they have not abused this discretion and that this court should not substitute its judgment for theirs. He points out that in view of the other sources of income available for the incompetent's maintenance, the total income may exceed all of the incompetent's obligations and implies that he, as guardian, would be in a better position to coordinate payment for such obligations than the trustees.

The objectors take the position that the problem of coordination is not a new one and that it existed long before the present trust was established. Prior to the death of testatrix and while Robert A. Hogue was serving as guardian of the estate of George A. Hogue, the income from two other trusts, aggregating about $7,500 annually, was paid by the respective trustees direct to the institute. When Mr. Mekel was appointed substituted guardian, these trustees continued to draw the maintenance checks payable to the institute, but, instead of mailing them direct, they

were channeled through the guardian so that he would be aware of what obligations remained to be met. The objectors assert that the income in the present trust should be handled in the same way and to subject such income to a second commission by requiring payments to be made to the guardian is unconscionable.

There appears to be no disagreement as to the sources of income available to pay the expenses of George A. Hogue at the Institute of the Pennsylvania Hospital, which are estimated to total $23,290 for the year 1970. The sources and the estimated annual income are as follows:

|  | *Estimated* |
| *Source* | *Annual Income* |
| 1. Trust under item twelfth (b) of the will of Margaret Horner Fearon, Deceased | $6,300 |
| 2. Trust under deed of Jane Horner Hogue dated December 22, 1941 | 5,500 |
| 3. Trust under will of Robert M. Hogue | 2,000 |
| 4. Income from Massachusetts Mutual Life Insurance policy paid directly to the guardian in payments of $50 per month | 600 |
| 5. Trust under deed of Samuel Horner, Jr., Dec'd | 5,500 |
| 6. Assets in the hands of Edward G. Mekel, Substituted Guardian of the Estate of George A. Hogue, an incompetent, which could produce approximately $500 per year | 500 |
| 7. Trust under the will of Jane Horner Hogue. This is a sprinkling trust which produces income estimated at $15,000 per year. The incompetent is included in the group who are permitted to benefit from this trust. | |
| Total | $20,400 |

The income from items two and three is applied directly for the bills of the incompetent beneficiary. The income from items four and five is distributed through the guardian who has been administering about $6,600 a year.

It is clear that the trustees had discretion to pay income either direct to the institution or to the guardian.

It is axiomatic that the court may not substitute its judgment for the trustees', although it will not permit an abuse of the discretion conferred upon them: Restatement, Trusts, §187. Taking all of the circumstances into consideration, we do not find that the trustees in this case have improperly exercised the discretion vested in them. On the contrary, the complexities resulting from the numerous sources of income for this incompetent beneficiary fully justify the decision of the trustees to try to simplify the administration of these funds.

While it is true that our courts have said a trustee should pay an incompetent beneficiary's bills directly, without the intervention of a guardian, when the instrument creating the trust gives him that discretion, the cases that so hold have generally involved income from a single source: Partridge Estate, 241 Pa. 158 (1913); Elliott Estate, 390 Pa. 608 (1957); Urquhart Trust (No. 1), 43 D. & C. 2d 387 (1967).

In the present case, the beneficiary is entitled to income from seven different sources. This is obviously a most unusual set of circumstances to which we should not blindly apply a principle of law arising from materially different factual situations. We think the trustees have acted wisely in reducing the number of conduits through which these funds must flow. In our opinion, any costs that may be incurred by so doing are proper charges, considering the benefits to be derived. . . .

And now, March 18, 1970, the account is confirmed nisi.

*William H. Lathrop,* for accountants.

*Edward G. Mekel,* p.p., guardian.

*Paul I. Guest,* for income beneficiary.

### SUR EXCEPTIONS TO ADJUDICATION

PER CURIAM, June 24, 1970.—Paragraph fifteenth of the will does not order the trustees to pay income directly to creditors of the life tenant. The trustees were given a legal discretion the exercise of which they have not abused. In the absence of abuse, the court should not interfere with the trustees' exercise of the discretion given them.

We are of the unanimous opinion that the learned auditing judge in awarding income to the guardian of the estate of the life tenant did not commit error.

The exceptions filed by the brother and sister of the incompetent life tenant are, therefore, dismissed.