## Knerr's Estate.

Argued November 8, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, J. J.

*Allan K. Grim,* with him *Samuel E. Bertolet, J. W. Bertolet, Stevens & Lee, George A. Kershner* and *Zieber & Snyder,* for appellants.

*A. H. Rothermel,* with him *C. H. Ruhl,* for appellees.

OPINION BY PARKER, J., March 4, 1938:

This appeal raises a question as to whether a bequest in a will vested in a legatee at the time of the testator's death.

Levi F. Knerr died October 13, 1932 leaving his residuary estate in trust first to pay a portion of the net income to his wife and to use a part thereof for her benefit in maintaining a residence for her, and then to distribute the balance of the net income "to my [his] son, Edward H. Knerr, or his heirs and my [his] daughter, Nellie E. Nyce or her heirs." He directed

that after the death of his wife the principal of the trust estate and the proceeds of the sale of his real estate, given the wife for life, be distributed "One-half (½) equal share thereof to my [his] son, Edward H. Knerr, or his heirs, and the remaining equal one-half (½) share thereof to my [his] daughter, Nellie E. Nyce, or her heirs." Edward H. Knerr died November 13, 1934 and the widow of the testator is still living. At the time of the son's death his interest in the estate of his father was subject to the lien of an attachment execution in which the liquidating trustees of The Pennsylvania Trust Company are plaintiffs. An account filed by testator's trustees discloses that there has accumulated since the death of Edward H. Knerr, income, to which he would have been entitled if living, in the amount of $649.60. This sum is claimed by the liquidating trustees and by the heirs of the son, his widow and daughter. The court below awarded this sum to Edward H. Knerr's widow and daughter and the attaching creditor has appealed. It will be observed that the property now in controversy is personalty, that the son, Edward H. Knerr died after the testator and that the widow is still living. We are of the opinion that Edward H. Knerr took a vested interest in the income bequeathed to him and that this conclusion is not affected by the fact that the testator in creating that interest used the word "distribute."

The appellees contend that by reason of the use of the term "or his heirs" there was a substitutional or alternative bequest to Edward H. Knerr's heirs and on the death of Edward, after his father, his wife and daughter became entitled to the income as a gift directly from the testator. We are unable to agree with this construction. There have been numerous decisions of the Supreme Court interpreting wills where legacies were given to a person or his heirs. In *Patterson v. Hawthorn*, 12 S. & R. 112, the testator directed his

real estate to be sold, the proceeds to be put out at interest and the income to be paid to his wife for life. The will then provided: "And at the decease of my beloved wife, *Mary*, I do allow the price of my land shall be equally divided among my two sons, . . . . . . and my daughters, . . . . . . or their heirs, in six equal parts." It was held that a daughter who died after the testator and during the life of the mother took a vested interest, the court there saying: "Where a legacy is given to a person, to *be paid* at a future time, it vests immediately; but where it is *not given* until a certain future time, it does not vest until that time; and if the legatee dies before, it is lost." It was further said that by use of the words "or their heirs" the testator meant that it should go to the legatee's legal representative, the administrator of the daughter.

In *Muhlenberg's Appeal*, 103 Pa. 587, testator gave the income to his wife for life and directed that after her death his real estate should be sold, his monies collected and the amount divided "by giving an equal share to each child or its heirs." One son died after the testator and before his mother, unmarried and without issue, and with that interest the appeal was concerned. The controverted fund was given to the son's administrator. To the same effect is *McGill's Appeal*, 61 Pa. 46. "The question of vested or contingent [interest] is not to be tested by the certainty or uncertainty of obtaining the actual enjoyment; for that would make the character of the estate depend, not upon the terms of its creation, but on the form of the result. Neither does it depend upon the defeasibility or indefeasibility of the right of possession; for many estates are vested without possession, as well as with, which are yet defeasible. If there is a present right to a future possession, though that right may be defeated by some future event, contingent or certain, there is nevertheless a vested estate": *Manderson v. Lukens*, 23 Pa. 31, 33.

"Where a legacy is made payable at a future time, certain to arrive, and not subject to condition precedent, it is vested where there is a person in esse at the time of the testator's death capable of taking when the time arrives, although his interest may be liable to be defeated altogether by his own death": *McCauley's Estate,* 257 Pa. 377, 101 A. 827.

If there be any doubt as to the vesting of the controverted interest and the meaning of the phrase "or his heirs" it was settled by *Golden's Estate,* 320 Pa. 4, 181 A. 484. There the will provided: "I wish to leave my wife Winnie Golden all my possessions during her lifetime after which I leave share & share alike to all my children or their heirs, except Robert who is to receive $10,000 more than the rest without restrictions." The testator left to survive him two sons, one daughter and five grandchildren, children of a son and daughter who died before the testator. It was held that the three living children and the spouses and children of the two deceased children took vested interests. In other words, the persons entitled to take were determined as of the date of the testator's death and the vesting was fixed accordingly.

Applying these principles to the Knerr will, since Edward H. Knerr was living at the death of his father, he took a vested interest. The expression "or his heirs" meant that if Edward H. Knerr predeceased his father his wife and child would have taken a like vested interest. This they did not do.

The appellees in support of their contention that it was an alternative or substitutional bequest to the wife and daughter of Edward H. Knerr relied upon the Act of June 29, 1923, P. L. 914 (21 PS 11) and the principle that "or" never means "and" unless there is a context which shows a necessity for such construction (*Gilmor's Estate,* 154 Pa. 523, 26 A. 614).

We cannot see that the Act of 1923 has the slightest

application to the present situation. That act changed the previous rule with relation to remainders so that the donor's or testator's heirs in certain circumstances "shall be construed as meaning the person or persons thereunto entitled at the time of the termination of the estate for years or for life or upon condition under the intestate laws of the Commonwealth as they shall exist at the time of such termination." It refers to persons who are heirs of the testator and not those of the legatee as here. Further, the widow of this testator is still living.

The rule with reference to the meaning of the word "or" is also irrelevant. As we have pointed out, the interest vested in the son on the death of the testator. If the son had not survived the father an alternative gift would have been effective and the estate would have vested in the heirs of the son and not in the son.

The court below recognized the force of *Patterson v. Hawthorn* and the cases following it but relied on *Scott's Estate*, 301 Pa. 509, 152 A. 560 and held that the gift was limited entirely in the direction to distribute and was inseparable from that direction with the result that the estate would not vest. An early and leading case stating the principle relied upon by the court below is *Moore v. Smith*, 9 Watts 403. There a testator provided: "And further, my said executors shall pay unto my grand-son, John Moore, 100 pounds like money, as soon as he arrives to be 21 years of age." The grandson died before he reached his majority. Chief Justice GIBSON said: (p. 407) "The ruling principle of a case like this is, that where there is no separate and antecedent gift which is independent of the direction and time for payment, the legacy is contingent; and it seems to be as well founded in reason, as rules of interpretation usually are. Where a gift is only implied from a direction to pay, it is necessarily inseparable from the direction, and must partake of its

quality; insomuch that if one is future and contingent, so must the other be. The implication of the one is an accessory of the other, and it consequently follows the nature of its principal; whence it results that there can be no separate and independent legacy which is not given in express terms."

The court below fell into a common error which is clearly pointed out in the interpretation of this principle by Chief Justice BROWN in *Marshall's Estate,* 262 Pa. 145, 149, 105 A. 63—followed in *Groninger's Estate,* 268 Pa. 184, 191, 110 A. 465—where he said: " 'Though there be no other gift than in the direction to pay or distribute in futuro, yet if such gift or distribution appears to be postponed for the convenience of the fund or property, or where the gift is only postponed to let in some other interest, the vesting will not be deferred till the period in question. Thus where stock is bequeathed to A. for life, and after his decease to trustees, upon trust to sell and . . . . . . divide the proceeds . . . . . . between C. and D.; as the payment or distribution is evidently deferred until the decease of A., for the purpose of giving precedence to his life interest, the ulterior legatees take a vested interest at the decease of the testator: 1 Jarm. on Wills 764. Where the enjoyment of the gift over is postponed to accommodate the estate, or for the payment of debts, or to meet any other burden first imposed, and not chiefly on account of the character of the donee, it is regarded as a decisive circumstance in favor of immediate vesting: 2 Redf. on Wills 236, section 37 . . . . . . The mode or form of the bequest seems to be regarded by Vice-Chancellor WIGRAM as immaterial . . . . . . The question is one of substance and not of form, and in all cases it is whether the testator intended it a condition precedent that the legatees should survive the time appointed by him for the payment of their legacies; and the answer to this question must be sought for out of the whole will, and

390

not in the particular expression only in which the gift is made: *Leeming v. Sherratt*, 2 Hare 14; *McClure's App.*, 72 Pa. 414.' "

As Edward H. Knerr was living at the date of the death of the testator the gift of one-half of the remainder of the income to him took effect immediately on testator's death. The enjoyment of the income was dependent only upon the earning and accumulation of a surplus income from that date. Even assuming for the sake of argument that there was no other gift than in a direction to pay or distribute in futuro, yet the gift or distribution was only postponed to let in the interest of testator's widow. Consequently, the vesting was not deferred. The enjoyment of the gift to Edward H. Knerr having been postponed to meet the burden created for the benefit of testator's widow, "and not chiefly on account of the character of the donee, it is regarded as a decisive circumstance in favor of immediate vesting": *Marshall's Estate*, supra. The assignments of error must be sustained.

The decree of the court below is reversed and it is directed that a decree be entered consistent with this opinion, appellees to pay the costs of this appeal.