PERKINS *et al. v.* CITIZENS AND SOUTHERN NATIONAL BANK, executor.

No. 13077. March 15, 1940. Rehearing denied March 27, 1940.

*Hall & Bloch* and *O. J. Coogler & Son,* for plaintiffs.
*Turpin & Lane,* for defendant.

BELL, Justice. ■ The first contention is that the various items by which the testatrix sought to create a trust for the benefit of aged women and underprivileged children of Bibb County, Georgia, are void, because they violate the rule against perpetuities. As we shall note later, the will referred to aged *dependent* women; but in this part of the opinion we are not concerned with the classes of

persons to be benefited, and will consider only the question as to remoteness of vesting, assuming that the trust is otherwise valid. The argument of counsel upon this question is based mainly upon the fact that the will provided for accumulation of the fund until it reaches the sum of $100,000, postponing use for charitable purposes in the meantime, and further provided that "the trustee shall be the sole judge as to the value of said corpus," and may determine whether any portion of the net income in excess of one half shall be administered by the advisory board during any year, even after such accumulation, but "with the express direction and upon the condition that at no time shall the net corpus . . be reduced below $100,000." Still other provisions are discussed in support of the general contention that the attempted trust is void under the law prohibiting perpetuities; and we have given consideration to the entire will, even if some parts of it may not be expressly mentioned hereinafter.

The Code, § 85-707, declares, in part: "Limitations of estates may extend through any number of lives in being at the time when the limitations commence, and 21 years, and the usual period of gestation added thereafter." Where the vesting of a gift is not limited upon the life of any person, the term can not be longer than 21 years. 1 Perry on Trusts and Trustees (7th ed.), 634, 635, § 380; 48 C. J. 939, § 5. "It is frequently stated that charities and trusts for charitable uses are not within the scope of the rule against perpetuities, for the reason that the principles of the common law and the provisions in constitutions and laws relating to perpetuities are designed only to prevent the entailing of estates and the accumulation of individual wealth and the creation of private trusts. This is true when the gift is made in such a way that the interest vests in the charity immediately or within the time permitted for the vesting of future interests, and in such cases a public or charitable trust may be perpetual in its duration." 21 R. C. L. 310, § 38. "Trusts for charitable uses commencing in præsenti or within the period of the rule against perpetuities are not obnoxious to the rule, although they may continue forever and beneficial interests may arise under them at a remote time, so long as the property given in trust vests in the trustee immediately or within the period prescribed by the rule, even though the payment or application of the described uses may be postponed; and the

court will ordinarily favor that construction of a gift in trust for charitable uses which makes it a vested interest, not subject to any condition precedent." 48 C. J. 986, 987, § 78. Where a gift is to vest in charity upon a *condition precedent* which may or may not happen within the period, it is void as violating the rule. It is not sufficient that the estate may by some possibility become vested within the permissible period, or even that it will probably do so; for, if the condition fixed by the donor is such that the gift may by any possibility fail to vest in charity within the lawful time, or if there is any room for uncertainty or doubt upon the question, the gift is void ab initio. In other words, it is not enough that it may so vest, but it must do so, in order to be valid. 21 R. C. L. 289, § 11. The foregoing statements accord, in a general way, with the principles laid down in numerous decisions which have been cited in the briefs and which have been carefully examined. In fact, as to these general propositions, there appears to be no difference between counsel in the present case.

So the great question here is whether the trust *vested* in charity at the death of the testatrix, or whether the *vesting* of title for that purpose was postponed until the happening of some event which may or may not happen within the period prescribed by the rule against perpetuities; and in connection with this question the intention of the testatrix in reference to accumulation is an important matter for consideration. In this State there is no statute expressly relating to accumulation or limiting the time within which an accumulation of money or property may be continued under a direction from the donor before its use or application to the trust to which it is to be ultimately devoted; although statutes upon this subject have been enacted in England and in some of the American States. 48 C. J. 990-994, §§ 81, 83. In the absence of statute, as in Georgia, a mere direction for accumulation would not render the trust void. Id. § 84. If, however, accumulation to a specific sum is made a *condition precedent* to the vesting in charity, the gift is wholly void, since it can not be said with absolute certainty that such an accumulation will necessarily be accomplished within the time allowed by the rule against perpetuities; and the same is true if accumulation for a specified period, with or without reference to amount, is made a condition precedent, and the period so fixed by the donor will exceed the time allowed by law. Gray on Perpetui-

ties (3d ed.), 522, 523, § 674; 48 C. J. 989, § 80. On the other hand, where the desired accumulation, whether to a particular amount or for a designated period, is not made a condition precedent, and the gift vests in charity at the donor's death, the direction for accumulation is one relating merely to management or administration, and will not affect the validity of the gift, even though such direction may, within itself, be invalid. Woodruff *v.* Marsh, 63 Conn. 125 (26 Atl. 846, 38 Am. St. R. 346) ; Codman *v.* Brigham, 187 Mass. 309 (72 N. E. 1008, 105 Am. St. R. 394) ; 10 Am. Jur. 599, § 21.

Item 4 of the will under consideration is as follows: "I give, devise, and bequeath all the property of which I may die possessed, both real and personal and wheresoever situate, to the Citizens and Southern National Bank, a national bank association having an office and place of business in the City of Macon, County of Bibb, and State of Georgia, but in trust nevertheless upon the following trusts, uses, and purposes." The language here is in the present tense, and is without condition or qualification. Certainly there is an immediate vesting in the trustee for whatever trusts and uses are later declared in the will for execution by it. One of the purposes for which the trustee shall hold the legal title is the care and maintenance of the family burial lot and the placing of a monument thereon in memory of the testatrix. Another is to hold and receive the assets, and to invest and reinvest the same in good income producing securities. From the income the trustee shall pay taxes and expenses, and shall then add the net income to the existing corpus from time to time for the purpose of accumulating a fund of $100,000. When the net cash value of the corpus in the hands of the trustee shall reach this amount, then an advisory board shall be appointed, as indicated by the testatrix, for the purpose of expending a portion of the net income for aid and assistance to designated classes of persons. The trustee will still hold the legal title, and will have a part in applying the income to charitable uses, notwithstanding the advisory board shall constitute the immediate agency for this purpose, and is granted broad discretion in reference both to objects and means, in the disposition of "that portion of the net income . . which may be turned over to it by the trustee." In view of these and other provisions of the will, it can not be said that the title vested in the trustee only for the purpose

of accumulation and was not impressed from the beginning with a trust for charitable use. While it is true that the advisory board shall be the agency for actual expenditure of the funds for charitable purposes, and that this board is not to come into existence until the corpus shall have reached the sum of $100,000, the legal title nevertheless vested in the trustee for all of the charitable purposes, on the death of the testatrix. Application of the fund to such charitable use through co-operation of the board *and the trustee* was at all times in prospect, and the title was subject to a trust for this general purpose from the very inception of the trustee's holding.

The testatrix had considerable to say upon the subject of accumulation. By the terms of her will she constituted her trustee "the sole judge as to the value of said corpus." It might be said also that she clearly intended to postpone *application* of the fund to charitable use until it reached the sum of $100,000, when an advisory board would be appointed for expenditure of such portion of the income as might be turned over to it by the trustee. She provided also that the trustee would have authority to prevent the use in any one year of any portion of the net income in excess of half of it, and fixed a condition "that at no time shall the net corpus" of the estate "be reduced below $100,000." None of these provisions made the accumulation or other event a condition precedent to the vesting of the equitable interest at the death of the testatrix, but were designed only to postpone payment or application to charitable use on stated contingencies, or to suspend such actual use after it may have been instituted, if suspension should be necessary to prevent reduction below $100,000. They all relate to mere management or administration, and not to time of vesting. The law inclines to construe conditions to be subsequent rather than precedent, and favors the holding of estates to be vested rather than contingent, in cases of doubt. Code, §§ 85-902, 85-708; *Cooper* v. *Mitchell Investment Co.,* 133 *Ga.* 769, 775, (66 S. E. 1090, 29 L. R. A. (N. S.) 291). So, even if there may be a reasonable doubt as to the meaning of this will, we should construe it as providing for an immediate vesting of the equitable interest, and certainly it can not be said that the language of item 4, purporting to make a devise of such interest in præsenti, was qualified or overthrown by any of the later provisions, since none of them are so

clear and unequivocal as to declare in its stead a condition precedent to such vesting in charity. Compare *Thomas* v. *Owens,* 131 *Ga.* 248 (62 S. E. 218); *Daniel* v. *Stewart,* 152 *Ga.* 423 (110 S. E. 178); *Moore* v. *Cook,* 153 *Ga.* 840 (4) (113 S. E. 526). In 3 Scott on Trusts, 2144, § 401, it is said that "if property is given in trust to accumulate the income for a period which may exceed the period of the rule against perpetuities, and the accumulation is an essential part of the testator's scheme, so that the gift to charity is contingent upon the accumulation of the income, the trust fails." This seems to be only a different way of stating that if upon a consideration of the entire will the gift to charity is subject to accumulation as a condition precedent, it will defeat the gift if the condition *may not* be satisfied within the time allowed by the rule against perpetuities; and especially does this appear to be the meaning of the quoted statement, in view of the authorities cited therefor and of other statements contained in the same section, all of which accord with the views hereinbefore expressed.

It is apparent from the entire will that the dominant purpose of the testatrix was to create a trust for the dispensing of charity, and not simply to accumulate a fund, or even to establish a foundation as a memorial for her parents; and it seems to us that we could not declare the trust invalid without subordinating the paramount intention to mere method of accomplishment or considering the means above the end. "Where there is an unconditional gift to charity, the gift will be regarded as immediate and good, although the particular mode of carrying out the charity which the donor has indicated is too remote. Consequently in such a case if a direction for accumulation is invalid, the only result is that the income is immediately distributable in charity; the heirs or next of kin are not let in." Gray on Perpetuities (3d ed.), 525, § 678. "If for any reason it should be impossible to administer a charitable gift by the method selected by the donor, the gift will not fail, but a court of equity will apply the cy-pres doctrine and provide some other method of administering the charity to accomplish substantially the same result." 10 Am. Jur. 682, § 133. Such is the law of this State; for it is provided in the Code, § 113-815, that "A devise or bequest to a charitable use will be sustained and carried out in this State; and in all cases where there is a general intention manifested by the testator to effect a certain purpose, and the par-

ticular mode in which he directs it to be done shall fail from any cause, a court of chancery may, by approximation, effectuate the purpose in a manner most similar to that indicated by the testator." Other provisions of the Code on the subject of charity are as follows: § 108-203: "The following subjects are proper matters of charity for the jurisdiction of equity: 1. Relief of aged, impotent, diseased, or poor people. . . 8. Other similar subjects, having for their object the relief of human suffering or the promotion of human civilization." § 108-201: "Equity has jurisdiction to carry into effect the charitable bequests of a testator, or founder, or donor, where the same are definite and specific in their objects, and capable of being executed." § 108-204: "A charity once inaugurated is always subject to the supervision and direction of a court of equity, to render effectual its purpose and object." § 108-202: "When a valid charitable bequest is incapable for some reason of execution in the exact manner provided by the testator, donor, or founder, a court of equity will carry it into effect in such a way as will as nearly as possible effectuate his intention." In the construction of all legacies, a court shall look diligently for the intention of the testator, and shall give effect to the same so far as it may be consistent with the rules of law. Code, § 113-806. These and the other sections of the Code referred to state succinctly and in a general way the law of this State in reference to charitable trusts, so far as pertinent to the instant case. The question is as to the application of these general principles to a concrete situation. Despite the many words in the will and in this opinion, the sum total of the case is just this: a present gift to charity, with no conditions attached to the gift itself, but with directions regarding the *mode* of use; a present gift, with right of enjoyment postponed as it were, provided the words of the testatrix as to the *manner* of execution may be given effect consistently with law. We are not here concerned with the validity of such directions.

It follows from what has been said, that whether the provisions of the will as to accumulation or other matter relating to administration or management be valid or invalid, or whether a court of equity might interpose to control an unreasonable accumulation or to prevent unreasonable delay, the fund in controversy vested unconditionally in charity on the death of the testatrix, and there is no merit in the contention that the intended trust was void as

violating the rule against perpetuities. In further support of this conclusion, see *Regents of the University System* v. *Trust Co.,* 186 *Ga.* 498 (2), 512 (198 S. E. 345, 121 A. L. R. 125); Ould *v.* Washington Hospital, 95 U. S. 303 (24 L. ed. 450); Russell *v.* Allen, 107 U. S. 163 (2 Sup. Ct. 327, 27 L. ed. 397); Jones *v.* Habersham, 107 U. S. 174 (2 Sup. Ct. 326, 27 L. ed. 401); Brigham *v.* Peter Bent Brigham Hospital, 134 Fed. 513; Tincher *v.* Arnold, 147 Fed. 665 (7 L. R. A. (N. S.) 471, 8 Ann. Cas. 917); Webb *v.* Webb, 340 Ill. 407 (172 N. E. 730, 71 A. L. R. 404); Powers *v.* Home, 58 R. I. 323 (192 Atl. 770, 110 A. L. R. 1361); Trautz *v.* Lemp, 329 Mo. 580 (46 S. W. 2d, 135); Frazier *v.* Merchants National Bank of Salem (Mass.), 5 N. E. 2d, 550; Bird *v.* Newcomb, 170 Va. 208 (196 S. E. 605); Knerr Estate, 130 Pa. Super. 383 (197 Atl. 528); Union National Bank *v.* Bunker, 232 Mo. App. 1062 (114 S. W. 2d, 193); Red Hook *v.* Bennett, 279 N. Y. 370 (18 N. E. 2d, 625); Reasoner *v.* Herman, 191 Ind. 642 (134 N. E. 276).

The present case is distinguished by its facts from Girard Trust Co. *v.* Russell, 179 Fed. 446, where, under different provisions of a will, accumulation was held to be a condition precedent to vesting in charity. We think the instant case may also be distinguished from First Camden National Bank & Trust Co. *v.* Collins, 114 N. J. Eq. 59 (168 Atl. 275), although it is somewhat difficult to understand the exact basis of the decision in that case. According to the terms of the trust, the original sum of about $600,000 would have accumulated for about 130 years from the death of the testator, and in that time would likely have reached the sum of $327,000,000. The controlling conclusion of the court seems to have depended upon construction of the trust instrument "as requiring the fund to be held until after the lawful period has elapsed, and until some specially constituted corporation can and shall be organized to receive it, and with no assurance whatever that such organization can be effected without legislation to authorize it." The *hiatus* was deemed by the court to be fatal. In *Murphy* v. *Johnston,* 190 *Ga.* 23 (8 S. E. 2d, 23), the testamentary scheme was materially different from that involved in the instant case, as pointed out in that decision. The fact, in the present case, that only income may be applied to charity does not in any way militate against the view that the trust does not violate the perpetuity rule. Since a trust

for charity may be created in perpetuity, it is obviously no objection that the principal sum shall not be subject to encroachment and that only the income may be dispensed for the purpose of charity. Under the facts of the present case, no decision is required as to whether the trust would have been valid if the trustee bank had been designated to receive and hold the fund only for the purpose of accumulation, with no present or future duty *upon it* in reference to application to charitable use. See, in this connection, Ould *v.* Washington Hospital, and Peter Bent Brigham Hospital, supra; Galland *v.* Seattle Trust Co., 103 Wash. 106 (173 Pac. 740) ; 3 Scott on Trusts, 2144, § 401-9; 10 Am. Jur. 598, § 18.

The next contention is that the trust is void for indefiniteness, because the time when any funds will be available for application to charitable use is not fixed with sufficient certainty, the trustee having the power to postpone the time indefinitely by exercising an uncontrolled judgment as to value. The provision of the will relied on in support of this attack is Item 12, as follows: "Said trustee shall continue to add the net income from my estate to the principal until the net cash value of the corpus of said estate shall be equal to the sum of $100,000. The trustee shall be the sole judge as to the value of said corpus, and the decision of said trustee in this respect shall be final." This attack must necessarily fail, under authorities cited in the preceding division. If the fund vested in charity as was held in that division, Item 12, being a provision for mere management or administration, would not destroy the trust, even if the item itself should be held void for indefiniteness as to time of actual use. "Where the method of execution of a trust defined by the terms of the instrument creating it is impracticable or illegal, the trust will not be permitted to fail if the overriding purpose of the donor, that the property is to be devoted to charitable purposes regardless of the peculiar method of execution, is manifest from the instrument. Any other course would sometimes defeat the very purpose of the trust, disappoint just expectations, and destroy gifts of great public importance and utility. Therefore, where a main charitable purpose is disclosed with reasonable clearness, directions of the donor relating to management of the trust, not intended as limitations, will be regarded as directory only, and not mandatory, if necessary to preserve the trust and carry out its leading purposes. In such cases, it will be

44

presumed that specified details of management were meant to be governed by circumstances, and this whether they were either impracticable or illegal." 10 Am. Jur. 678, § 127. Furthermore, the grant of such authority or discretion as to time of use, depending on judgment as to value, would necessarily contemplate a reasonable judgment, and not an abuse of such discretion. In case of such abuse, a court of equity could interfere. 3 Scott on Trusts 2046, § 382. Such a provision is not the equivalent of an option to defeat the donor's intention, or of conferring authority to postpone action indefinitely, regardless of true value.

The decision in *Egleston* v. *Trust Company of Georgia*, 147 *Ga.* 154 (93 S. E. 84), does not sustain the contention here under consideration. It appeared in that case that the testator had executed a will establishing a trust for the creation of a children's hospital. He later executed a codicil in which he gave to his "executors" express authority to set aside, adopt, or amend the original provision for a hospital, and "also to delay the time for carrying out this provision as adopted and (or) amended by them." The executor filed a petition for construction of the will and the codicil, and for direction. Another person filed an intervention in which he insisted that the codicil worked a revocation as to the item providing for a hospital. It was held by this court that the codicil was too uncertain and indefinite as to both the object in view and the time for performance, authority for indefinite delay being the equivalent of authority for non-performance. It was further held that the codicil did not work a revocation of the original item and that such original provision should be executed. In the instant case there was no express authority to delay performance, equivalent to authority for non-performance. Nor does the decision in *Trust Company of Georgia* v. *Williams,* 184 *Ga.* 706 (192 S. E. 913), require a different conclusion in this connection, the basis for that decision being that the hospital did not appear to be a charity.

■ The trust as declared in the will was not void for the following reasons, or any of them, as contended: (a) uncertainty as to classes of beneficiaries; (b) the purposes of the trust are not described with sufficient definiteness; (c) in view of the authority conferred upon the trustee, the fund may be applied to other than charitable purposes. These contentions are based chiefly upon Item 15, in which an advisory board is given authority to expend

all or any part of the net income "for the aid and assistance of aged females in Bibb County, Georgia, and of underprivileged children in said county." In later reference to classes in the same item, the words are, "aged dependent women and underprivileged children in Bibb County, Georgia." Construing the item as a whole as it related to women, the word "dependent" must be given signification as further limiting the class of aged women intended by the testator as beneficiaries. The beneficiaries, then, are aged dependent women and underprivileged children of Bibb County. Neither class of persons is so indefinite as to render the trust void for uncertainty in reference to beneficiaries. The purposes of the trust, as distinguished from objects, are for "aid and assistance" to the classes mentioned. Considering these words in connection with the classes, to wit, aged dependent women and underprivileged children, we think they are sufficient to show with reasonable certainty the kind of benefits which the testatrix desired to confer. What are the needs of aged dependent women and underprivileged children? One thing would be financial help in supplying the necessities of life, with education added perhaps in case of the children. There may be still other needs, but the testatrix is seeking to confer aid through financial means, and the language of the will does not fail to provide a guide for the trustee or for a court of equity as to the benefits to be thus extended. Nor is there fatal uncertainty as to the amount to be so applied. Compare Speer *v.* Colbert, 200 U. S. 130 (26 Sup. Ct. 201, 50 L. ed. 403).

Neither the advisory board nor the trustee will be authorized to divert the fund to other than charitable purposes, as contended. While the advisory board is in terms given final discretion as to the objects of the charity and the means by which it shall be administered, and is called upon to exercise Christian charity in determining the specific objects and methods of carrying out the donor's wishes, her principal wish and desire was that the net income as turned over to the advisory board shall be used to do the greatest possible good "to aged dependent women and underprivileged children in Bibb County, Georgia;" and upon a fair construction of the will the trustee and the advisory board are directed to use the fund in the first instance for the benefit of these classes as the preferred objects of the donor's bounty. If there should ever come a time when there are no such children or females in the

46

county, then the advisory board with the concurrence of the trustee is authorized to use the net income for such other charities in Bibb County as in their opinion would most nearly approximate the testatrix's wishes. This was not authority to select other charities to the exclusion of the classes specified, or to apply the funds to purposes other than charity. See, in this connection, *Beall* v. *Fox*, 4 *Ga.* 404; *Newson* v. *Starke*, 46 *Ga.* 88; *Hodgson* v. *Hodgson*, 150 *Ga.* 51 (102 S. E. 525); *Moss* v. *Youngblood*, 187 *Ga.* 188 (200 S. E. 689); *Goree* v. *Georgia Industrial Home*, 187 *Ga.* 368 (200 S. E. 684), and cases cited in the last two decisions. The trust was not void for any of the reasons urged by the plaintiffs, and the court did not err in sustaining the general demurrer and dismissing the petition. In *Bramblett* v. *Trust Company of Georgia*, 182 *Ga.* 87 (185 S. E. 72), only "gentlewomen" were designated as beneficiaries. The trust would have applied to all the women in the world, of whatever race, station, or class, and regardless of their wealth or need; provided *only* that they were "gentlewomen," whatever that may have implied. The present decision does not in any way conflict with the rulings made in that case.

*Judgment affirmed. All the Justices concur, except Atkinson, P. J., disqualified.*