PACE *et al.,* exrs., *v.* DUKES *et al.*

No. 16750. September 12, 1949. Adhered to on rehearing October 13, 1949.

J. B. *Copeland* and R. R. *Jones*, for plaintiffs.

*Langdale, Smith & Tillman* and *Franklin, Eberhardt & Barham*, for defendants.

CANDLER, Justice. (After stating the foregoing facts.) ▮ We deal first with the character of the trust which the deceased sought to create by the terms of his will. Unless it is an exclusively charitable one, it cannot be enforced in a court of equity, and all other questions presented by the record will become moot. "The following subjects are proper matters of charity for the jurisdiction of equity: 1. Relief of aged, impotent, diseased or poor people. 2. Every educational purpose. 3. Religious instruction or worship. 4. Construction or repair of public works, or highways, or other public conveniences. 5. Promotion of any craft or persons engaging therein. 6. Redemption or relief of prisoners or captives. 7. Improvement or repair of cemeteries or tombstones. 8. Other similar subjects, having for their object the relief of human suffering or the promotion of human civilization." Code, § 108-203. "A charity once inaugurated is always subject to the supervision and direction of a court of equity, to render effectual its purpose and object." § 108-204. In the present case the testator gave the residue of his estate in trust to his executors to be used for "religious, charitable, educational and humanitarian purposes in Terrell and Coweta Counties, Georgia, in substantially equal proportions." While he indicated in no uncertain terms his preferred object of charity, namely, to "ease some pain or make better some impaired or deficient faculty of some child or man or woman and thus add somewhat to brighten the lives of a few worthy people," nevertheless, he gave his executors "free and unhampered" authority to choose for him between the enumerated objects he desired to help by his generosity. Concededly, the testator had a right to create a trust which a court of equity will enforce for the benefit of charity, and gifts for religious and educational purposes are, of course, charitable. The case therefore turns upon the meaning and the construction which must be placed upon the word "humanitarian" as it is used in the testator's will. The defendants in error, who were the respondents in the trial court, contend that the testator by the use of the word humanitarian undertook and intended to create a trust for both charitable and non-charitable purposes, and admittedly if they are correct in that, then the whole gift fails as a charity for uncertainty and equity has no jurisdiction

to enforce it. 11 C. J. 330, § 45; 14 C. J. S. 456, § 22; *Newson* v. *Starke*, 46 *Ga.* 88, 93; Hyde *v.* Hyde, 64 N. J. Eq. 6 (53 Atl. 593). It is strenuously argued by counsel for the defendants in error that a gift for humanitarian purposes includes one for humane purposes, and that the latter is not charitable within the meaning of our statute defining charity. We do not agree. Humane and humanitarian are not synonymous words, though derived from the same Latin word; but usage has decreed to them different meanings. These meanings are, of course, kindred, but by no means the same. In fact, it was necessary in the historical development of the language that there be two words with different connotations, the one to express or denote an attitude of kindness, compassion, or tenderness of a human being toward lower animals; the other to denote a similar attitude of one human being toward other human beings. In no case are the two words ever used interchangeably. That is to say, the word humane is never used to describe acts of charity, love, and mercy of human beings toward other human beings; neither is the word humanitarian used to describe the good works performed by a human being in behalf of lower animals. In any case where a person wishes to give money for the betterment of lower animals, he would naturally describe such an act as being humane. Similarly, if one wishes to give money for the benefit of human beings, he would, as the scrivener did in the case at bar, properly say that he was giving it for humanitarian purposes. Humane means benevolent, merciful, having a fellow-feeling, tender, benign, having tenderness or compassion on dumb animals, and Webster's New Dictionary (1945 Ed.) illustrates its proper connotation by means of this sentence: "Kindness to dumb animals is taught by the Humane Society." And by the same authority "humanitarian" as an adjective, which it is in the instrument under consideration, is defined as "That which tends to benefit human beings." Webster's New International Dictionary (2nd Ed.) defines "humanitarian" as a noun, as follows: "1. An adherent of humanitarianism [Regard for the interests of mankind; benevolence]. 2. One actively concerned in promoting the welfare of his kind; a philanthropist." Roget's Thesaurus, a recognized authority on synonymous terms, gives 116 direct synonyms for the word "humanitarian,"

both as an adjective and as a noun, but the word "humane" is not included among this number. A humanitarian, according to the universally accepted meaning of that word, is a person who is interested in humanity—that is, interested in his fellow humans. A humanitarian act is a deed concerned with or having to do with the welfare of human beings, whereas a humane act is an act of human kindness toward a lower animal. And by common usage, which is the determining factor of definition, a humane person is one who treats lower animals with compassion and consideration, while a humanitarian concentrates his efforts of benevolence on his fellow man. A person might be either, neither, or both. It is possible, but does not necessarily follow, that a man who is humane is also a humanitarian, or that a humanitarian is also humane. The writer has known at least one person who was an inhumane humanitarian, some who were humane but not humanitarian, and many who were humane humanitarians. Let us illustrate: When, as a small girl, Florence Nightingale splintered and bandaged a wounded dog's broken leg and nursed him back to recovery, she was doing a humane work; but when, as a woman, she organized a nursing corps and went out to care for the sick and wounded in the Crimean war, she was performing a humanitarian service. Usage has definitely settled the fact that connotation of these two words (humane and humanitarian) should be limited to these areas of meaning, and the one cannot be used for the other without wrenching the dictionary and the exact usage out of their proper historical relationships. In the instant case the testator as a humanitarian has by the terms of his will given the residue of his estate to his executors in trust to be used by them for the humanitarian purpose of alleviating human suffering or for the promotion of human civilization, and as it is written into our law such an act is charity.

■ Another contention made in the instant case is that the disposition which the testator made of the residue of his estate is void because it would create a perpetuity within the meaning of the Code, § 85-707. There is no merit in this. Under the terms of the testator's will, the charitable estate created thereby vested either immediately upon his death or upon the death of his brother if the latter should survive him, and it is a well-

settled principle of law in this State that, where a gift to charity unconditionally vests for that purpose within the period permitted by the rule against perpetuities, it is not void as violating the rule. And this is true for the reason that the law against perpetuities does not apply to charities. Jones v. Habersham, 107 U. S. 174 (9) (2 Sup. Ct. 336, 27 L. ed. 401); *Regents of the University System* v. *Trust Company of Ga.*, 186 *Ga.* 498, 512 (198 S. E. 345, 121 A. L. R. 125); *Murphy* v. *Johnston*, 190 *Ga.* 23 (7) (8 S. E. 2d, 23); *Perkins* v. *Citizens & Southern Nat. Bank*, 190 *Ga.* 29 (8 S. E. 2d, 28); *Taylor* v. *Jesse Parker Williams Hospital*, 190 *Ga.* 349, 356 (9 S. E. 2d, 165).

■ The remaining contention is that no trust estate was created by the testator, because its vesting was made contingent upon a condition precedent which failed, namely, that the testator's brother, Otis H. Dukes Sr., should survive him. There is likewise no merit in this. Under the provisions of the will, the brother, if he survived the testator, was to receive during the remainder of his life a stated monthly amount from the estate, and upon his death the residue was to be used by the executors for religious, educational, charitable, and humanitarian purposes. There is nothing in the will which would authorize a finding that the testator's intention to create a trust was in any way contingent upon the time of his brother's death, whether before or after his death. To hold otherwise would be the equivalent of saying that it was the testator's intention to die intestate as to the residue of his estate in the event he should survive his brother, and in our opinion the will, when considered as a whole, should not be given such a construction.

For the reasons stated in the three divisions of this opinion, the court erred in rendering the judgment complained of.

*Judgment reversed. All the Justices concur.*