199 A.2d 314 (1964)
Grace Vale ASCHE, William G. Vale and George T. Reed, Jr., Executors under the will of Ruby R. Vale, deceased, Plaintiffs,
v.
Grace Vale ASCHE et al., Defendants.
Court of Chancery of Delaware, New Castle.
February 7, 1964.
*315 Blaine T. Phillips of Berl, Potter & Anderson, Wilmington, for plaintiffs and defendants Ruby R. Vale Foundation and Grace Vale Asche, William G. Vale and The Milford Trust Co., as trustees under the will of Ruby R. Vale.
Richard J. Abrams of Richards, Layton & Finger, Wilmington, for defendants Vale Asche Ackerman, Bettyann Asche and Bank of Delaware, executors of estate of Elizabeth W. Vale.
Andrew B. Kirkpatrick, Jr., of Morris, Nichols, Arsht & Tunnell, Wilmington, guardian ad litem for defendants Asche Ackerman and her unborn issue, the unborn issue of Vale Asche Ackerman and Bettyann Asche, and the unborn issue of Grace Vale Asche.
E. Dickinson Griffenberg of Killoran & Van Brunt, Wilmington, guardian ad litem for the defendants Elizabeth Anne Asche, Frederic Bermingham Asche, III, Edward Craig Asche, Franz Monroe Asche, Elizabeth Vale Asche, the lawful issue born and unborn of Frederic B. Asche, Jr., and the lawful issue of the children of Frederic B. Asche, Jr.
Januar D. Bove, Jr., Atty. Gen., since succeeded by David P. Buckson.
MARVEL, Vice Chancellor:
The executors of the estate of Ruby R. Vale seek instructions concerning the carrying out of testamentary directions given by the testator, who died a resident of Milford, Sussex County, on January 2, 1961, having first made his last will and testament and a first codicil thereto. The late Ruby R. Vale was a well-known attorney at law whose will discloses a purpose to dispose of half of his adjusted gross estate, after payment of taxes assessed against his residuary estate, in a manner designed to make continuing provision for his immediate and remote descendants "* * * during the period of time valid under the law of the State of Delaware for lawful issue born after my death * * *", following the accumulation of $2,000,000 of trust income for educational uses and purposes. Plaintiffs assert that as executors they are under a duty to urge that the will should be upheld in its entirety and do so. However, inasmuch as they entertain doubts as to the entire validity of provisions of the Vale will having to do with the non-marital trust, the device selected by the testator to carry out his basic testamentary plan, their complaint seeks instructions concerning the distribution of property directed to be placed in such trust. In particular, they ask to be informed as to whether or not the provisions of Items Third II and III of Mr. Vale's will pertaining to the vesting and duration of the property interests sought to be given to surviving members of his family violate the rule against perpetuities and its companion doctrines. In the event that such provisions of the trust should be held to be valid plaintiffs ask to be informed whether or not the bequest for educational purposes, also made in Item Third III, is a valid charitable gift. Should such bequest *316 be held to be invalid as violative of the rule against unreasonable accumulations or otherwise, plaintiffs seek further instructions as to whether or not the failure of the attempted bequest for educational purposes brings about a failure of the so-called non-marital trust in its entirety. If not, then the question remains as to what parts of the trust, if any, are valid. All participating parties, other than the Attorney General, have moved for summary judgment.
The basic questions raised in the complaint derive from decedent's directions concerning the administration and distribution of one half of his adjusted gross estate which he directed to be paid into a separate non-marital trust.[1] Examination of the language employed by the testator discloses that he first directed that the entire income allocable to such non-marital trust property should be held, invested and reinvested by the trustees thereof "* * until there has been accumulated by the Trustees the sum of Two Million ($2,000,000) Dollars, as artificial principal, at which time the said Trustees shall irrevocably assign, transfer and pay over the said sum of Two Million Dollars * *" to a corporation to be known as the Ruby R. Vale Foundation "* * * for educational uses and purposes, which perpetual foundation shall be caused to be set up and established by my Trustees solely for said purposes * * *". The will then goes on to direct that after the accumulation of said two million dollars for educational uses and purposes, that thereafter until the ultimate distribution of the corpus of the trust, income of the separate trust is to be paid to the testator's daughter, grandchildren, and to his great grandchildren living at his death as well as to great grandchildren born after the said testator's death, but as to the latter only for a period of fifteen years.
Guided by the basic principles of the rule against perpetuities and its companion doctrines not only as such rules apply to the vesting and accumulation of the proposed gift to charity but also as they pertain to the vesting of subsequent gifts made to members of testator's family, the Court must accordingly decide whether or not testator's basic intention to provide for his descendants over a long period of time, after first providing for a $2,000,000 gift of accumulated income for educational purposes, has been legally accomplished in its entirety, and, if not, what parts of said plan, if any, are valid.
The attorneys for the plaintiff executors and the defendants Ruby R. Vale Foundation as well as for Grace Vale Asche, William G. Vale and The Milford Trust Company, trustees under the will, as noted above, take the position that the non-marital trust directed to be set up under the terms of the Vale will is valid not only insofar as it provides for a charitable trust but also in its provisions designed for the ultimate benefit of members of the Vale family. If, however, the Court should determine that the charitable bequest sought to be made by the testator is invalid, such parties alternately contend that in such event the coming into play of the provisions for the payment of income and principal to Mr. Vale's descendants would merely be accelerated. The guardian ad litem for the issue of testator's son-in-law, Frederic B. Asche, and their lawful issue, on the other hand, while conceding that all other interests in the trust estate, including those of his clients, must necessarily vest within the period fixed by the rule against perpetuities, contends that the bequest to the Ruby R. Vale Foundation *317 violates such rule and is accordingly void. Taking a position directly opposed to that of the guardian, the attorneys for the estate of the decedent's widow contend that while the gift to charity is valid, all subsequent interests provided for in the will are invalid as violative of the rule against perpetuities. Finally, the guardian ad litem for the testator's granddaughter, Asche Ackerman and her unborn issue, for the unborn issue of the testator's daughter, Grace, as well as for unborn issue of other granddaughters of the testator, while contending on the one hand that the provisions in the Vale will which direct accumulations of income for the Ruby R. Vale Foundation presumptively violate the rule against perpetuities, apparently takes a secondary position that the entire trust is perhaps valid in toto if construed to be limited in duration to lives in being and twenty-one years thereafter.
The primary argument made by the guardian ad litem for the issue of testator's son-in-law, Frederic B. Asche, and their lawful issue, in support of his contention that the gift to charity contemplated by Mr. Vale is not valid is that such gift, not being vested but one coming into being only after the sum of $2,000,000 has been accumulated, is accordingly contingent.
The basic point sought to be made is apparently that on such theory the gift to charity may not vest within the period allowed by the rule against perpetuities and is accordingly void. The point of distinction between a vested gift to be paid in futuro and a contingent gift to be paid to a person only upon reaching a certian age is made by Chief Justice Booth in the case of Carey v. Pettyjohn, 5 Har. 296, as follows:
"* * * if a legacy be given to a person, payable, or to be paid, at, or when he shall attain the age of 21 years; or at or upon any other definite period or event; the legacy becomes vested immediately on the testator's death; and is transmissible to the executors or administrators of the legatee, although he dies before the time of payment. But if the words `payable' or `to be paid' are omitted, and the legacy is given at 21; or at or upon any other future period or event; the interest is contingent, and depends for its vesting on the legatee being alive at the period or event specified."
On the basis of this principle it is also contended that the gift here in issue is contingent for another reason, it being additionally argued in disregard of the fact that the cy pres doctrine is recognized in Delaware that at the time of Vale's death the corporation contemplated by the testator as the recipient of the ultimate accumulation of $2,000,000 of income was not in existence.
In the first place, while a legacy made to an individual at twenty-one years of age is contingent because of the possibilty of the legatee's death prior to reaching such age, here we are dealing with a charitable gift to a perpetual foundation, the purposes of which exist continuously and do not come of age, as it were, in futuro. However, apart from this practical distinction, the language here used is not, in my opinion, susceptible to the narrow interpretation advanced by the guardian ad litem for the Asche children and their issue. The object of Mr. Vale's bounty is not "* * * a corporation to be created for the purpose of giving effect to the gift * * *" but the educational purposes which the testator wished to advance. Compare Ingraham v. Ingraham 169 Ill. 432, 48 N.E. 561, 49 N.E. 320. In other words, I have no doubt but that the charitable bequest made by the testator became vested on his death, the enjoyment of the gift merely being postponed until the stipulated amount of income had been raised, and I fail to see why the absence of a direction that principal as well as income ultimately be paid over to a perpetual foundation makes any substantial difference in arriving at a proper *318 interpetation and implementation of the testator's plan. In short, he clearly intended that the designated moneys should be applied to educational uses and purposes in perpetuity, and there is no acceptable possibility of the nonexistence of such uses and purposes at the time such payment is ready to be made and applied to such ends pursuant to the specific design to be set up by the trustees. Finally, the language of the will gives no indication that the testator had any intention of making the gift in question contingent on the happening of any intervening prior event, and, of course, as will be noted later, the permissible length of the period during which moneys may be accumulated for charitable purposes is not governed by the strict terms of the rule against perpetuities.
There is apparent agreement on the fact that the principle sum here involved exceeded $1,900,000 at the time of testator's death and that the will provided for no estate prior to the charitable uses and purposes contemplated by the testator. The sum to be devoted to such purposes, which had appreciated to the sum of $2,150,000 at the time it was turned over to the trustees, has at least since such date been devoted to the testator's charitable purpose of endowing a $2,000,000 educational foundation incorporated under the name of the Ruby R. Vale Foundation. In my opinion, the facts and circumstances surrounding Mr. Vale's gift are closely analogous to those found in the charitable gift case of Girard Trust Company v. Rectors, Wardens etc. of St. Anne's Church, 30 Del.Ch. 1, 52 A.2d 591. In the cited case, the will in question provided:
"All the rest, residue and remainder of my estate * * * I give * * * IN TRUST * * * to accumulate the income therefrom until, in the opinion of trustee, a sufficient amount has been accumulated, both as to principal and income, to build a small Chapel of Ease and a Parish House in connection with St. Anne's Protestant Episcopal Church at Middletown, Delaware, whereupon the corpus or principal of my said residuary estate, together with the accumulations thereon, shall be paid over for the erection of such Chapel and Parish House * * *."
In upholding such bequest, the Chancellor, invoking will construction principles which favor early vesting as well as an avoidance, if possible, of violations of the rule against perpetuities and against unreasonable accumulations, stated:
"Nothing in the language of the will providing for the accumulation of income suggests that such accumulation is to be a condition precedent to the vesting of the Church's interest. Even if it should be said that there is some doubt, this doubt is to be resolved in favor of a conclusion which will result in the early vesting of the estate. * * Moreover, as Professor Gray states in his work on The Rule Against Perpetuities (4th Ed.) § 673: `The tendendency of the courts being to construe limitations as vested, the arrival of the period fixed for, or needed for, the accumulation will not be deemed a condition precedent to the gift of the accumulated fund, unless the language employed requires such a construction.'"
See also Ingraham v. Ingraham, supra, Webster v. Wiggin, 19 R.I. 73, 31 A. 824, 28 L.R.A. 510, and Brigham v. Peter Bent Brigham Hospital (C.A.1) 134 F. 513.
Furthermore, as noted above, the fact that the period during which $2,000,000 of income is to accumulate in the hands of the trustees prior to being applied to educational uses and purposes may conceivably exceed the time specified in the rule against perpetuities does not, of course, affect the legality of such accumulation. As stated in *319 the case of Girard Trust Co. v. St. Anne's Church, supra:
"* * * the validity of provisions for accumulation of income in charitable trust cases seem to have been tested in most cases by the reasonableness of the period of time during which the income is to be accumulated, rather than by the rule against perpetuities."
See also Simes and Smith, Future Interests § 1467 where it is stated:
"If a trust for charity is vested, a provision for accumulation of income is valid and will be effectuated so long as it is not unreasonable. * * * `In the case of gifts to charities, the ordinary rule against accumulations does not apply, the only limitation being in the power of the court to take remedial measures should an unreasonable condition result.' The argument for this position is about as follows: Charities are favored by the court. The charitable trust is subject to the directions of the court of equity; and, if the accumulation should become unreasonable, the court has power to direct the trustee to disregard it. Thus the charitable trust will be sustained, and objectionable features will be prevented by subjecting it to the control of the court."
Here, even on the hypothesis of a minimal return of income earned by the trust property turned over to the trustees of the trust here in issue, the stipulated amount of artificial principal contemplated by the testator should be realized within a reasonable time even though such period might conceivably run beyond the time allowed by the rule against perpetuities. Cases to the contrary such as Girard Trust Company v. Russell, (C.A.3) 179 F. 446, and Murphy v. Johnston, 190 Ga. 23, 8 S.E. 2d 23, are concerned with situations negativing a finding of a present gift. In other words, because of conditions precedent, reciprocal covenants, unreasonable periods of accumulation, and in the latter case, preceding gifts for non-charitable purposes, a vested gift in such cases could not be established. A significant element in each case was, I believe, that the money to be deposited pursuant to the terms of a brief, inconclusive inter vivos trust agreement in the Russell case was a mere $377.35, and in the Murphy case the money to be accumulated for ultimate charitable uses (after being applied to certain non-charitable purposes) was approximately $1,700, an amount referred to by the court as "* * * a small sum of money". This sum was directed to be held until, with additions it had reached the sum of $600,000. However, on the same day on which the Murphy case was decided, the same court (The Supreme Court of Georgia) in a factual situation more closely analogous to that found in the case at bar held that a will provision for the accumulation of income prior to the application of moneys for charitable purposes did not create a condition precedent to a charitable gift, Perkins v. Citizens and Southern National Bank, 190 Ga. 29, 8 S.E.2d 28. I conclude that the better reasoned cases, in which not only the amount involved in relation to a reasonable accumulation period is realistic but the intention of the testator to make a present gift is clear and uncomplicated, control in the case at bar. Here, I am satisfied that the testator not only intended a present gift to charity, the enjoyment whereof was merely postponed until the stipulated sum had been accumulated but that the time reasonably needed for the accumulation of $2,000,000 of income for payment over to a charitable foundation is entirely within proper limits.
The next matter to be decided is how the testator's intended gift for educational uses and purposes impinges on the continuing plans of the testator for the financial benefit of his daughter and her descendants, living and unborn. In other words, before evaluating the independent validity of the will provisions having to do with *320 the eventual devolution of income and eventually principal into the hands of the testator's family, it is necessary to determine in limine how the provisions for the endowing of a charitable foundation affect those parts of the will having to do with the desired ultimate benefiting of the Vale family.
After directing that his adjusted gross estate be divided into two equal estate trusts, one for the separate use of his wife and the other made up of the "* * * remaining portion of my estate which may or may or may not qualify for such marital deduction * * *", the testator's testamentary directions[2] included the following specifications as to the duration of the trust here in issue, namely that the property therein deposited should be held:
"* * * for and during the successive lives of: (1) my daughter, GRACE VALE ASCHE, wife of Frederic B. Asche; of (2) all my grandchildren, FREDERIC B. ASCHE, JR., VALE ASCHE ACKERMAN, wife of Marion S. Ackerman, III, and BETTY ANN ASCHE and of (3) the respective lawful issue of every of my three grandchildren living at my death or (4) during the period of time valid under the law of the State of Delaware for lawful issue born after my death; * * *."
While I agree that in using the above language, Mr. Vale no doubt manifested a desire that the life of the entire trust be limited to the period contemplated by the rule against perpetuities and that no interest created therein should vest later than within the time valid under the law of Delaware, he appears to have overlooked the fact that such rule does not strictly apply to the permissible period of accumulations for a charitable use. (In fact, it could also well be argued that insofar as a private trust for members of his family was planned by the testator, such controversial phrase may well have been redundant.) The point is that so long as the non-marital trust remains the depository of half of his adjusted gross estate, pending the accumulation of the stipulated $2,000,000 of income, it remains, of course, a charitable trust. To be sure, there are cases approving of trust arrangements which have provided that property be held in trust for the benefit of one's family "* * * as long as is legally permissible * * *" or for as long "* * * as the law in such cases admits * * *", however, no authority has been cited which has applied such a so-called savings clause to a trust for charitable uses and purposes in the manner urged by plaintiffs. The cited case of Holdeen v. Ratterree (C.A. 2) 292 F.2d 338, is not authority for the contention that a trust for charitable accumulations such as the one here involved may be arbitrarily terminated under the rule against perpetuities short of the time the stipulated amount of accumulations has been achieved. Counsel for the plaintiffs and others argues, however, that the testator's intent should be, if possible, carried out and that if in the unlikely event income in the amount of $2,000,000 has not been raised at the end of twenty-one years following the death of the last surviving life in being, the trust must then terminate and the moneys then in hand for educational uses and purposes, in whatever amount then accumulated, must be forthwith turned over to the Ruby R. Vale Foundation and the entire trust terminated. Admittedly, the testator could have incorporated just such a provision in his will. The point is he did not. In fact, he specifically provided for payments to his daughter and others from the non-marital trust "* * * After the accumulation of said Two Million Dollars as artificial principal." There is no law of Delaware which *321 precisely limits the period during which moneys may be accumulated for charitable purposes and there is no absolute certainty that the accumulation directed here will be accomplished in time to permit the timely vesting of the ultimate interests envisaged by the testator. The language used by the testator in Article II of his will, while perhaps independently operative insofar as the testator was concerned about a possible violation of the rule against perpetuities resulting from his directions for the taking of property by great grandchildren born after his death, such savings clause cannot, in the light of the law of Delaware pertaining to accumulations for charitable purposes, serve to terminate the initial and favored charitable use created by the testator, Girard Trust Company v. St. Anne's Church, supra. Significantly, the case last cited is also authority for the proposition that the[3] purpose or motive of the testator in creating a charitable trust does not affect its legality.
In view of this holding, it would, in my opinion, serve no useful purpose to follow out the conflicting views of the litigants as to the actual holding of Fitchie v. Brown, 211 U.S. 321, 29 S.Ct. 106, 53 L. Ed. 202, concerning the effect on a trust of language limiting it to "* * * as long a period as is legally possible", and whether or not such case and others cited placed mistaken reliance on the English doctrine of executory trusts and ignore the principle that a trust may validly extend beyond the period allowed by the rule against perpetuities, Vol. 4, Restatement, Property, § 378, and Vol. 1A Bogert, Trusts and Trustees, § 218, p. 405. I say this because I am satisfied that the cases on which reliance is placed to persuade the Court that the entire non-marital trust was directed to be terminated within the period of the rule against perpetuities are not concerned with the principle recognized by the Chancellor in Girard Trust Company v. St. Anne's Church, namely that the validity of a provision for the accumulation of income for vested charitable uses is tested in most cases by the reasonableness of the period of time during which income is to be accumulated rather than by the rule against perpetuities. In the light of this principle it is obvious that some or all of the interests envisaged by the testator for the benefit of members of his family may not vest within a life or lives in being at the testator's death and twenty-one years thereafter. Accordingly, these successive interests in trust income and principal must fail, Taylor v. Crosson, 11 Del.Ch. 145, 98 A. 375, and there is no need to deal with other contentions of the attorney for plaintiffs and others based on the law of class gifts.
The motion of the executors of the estate of Elizabeth W. Vale will be granted and the motions of the other moving parties insofar as they seek relief inconsistent with the rulings herein above made are denied.
On notice, an order may be submitted to the effect that the non-marital trust provided for in the will of Ruby R. Vale is valid only insofar as it serves to carry out the testator's instructions to accumulate income for educational uses and purposes and directing that upon the accumulation of $2,000,000 of income in said trust that the corpus thereof be distributed as intestate property of the said Ruby R. Vale.
NOTES
[1] While the will also provided for a separate marital trust for the benefit of testator's widow over which she was granted a power of appointment, such power was exercised by the widow who died some eight months after her husband's death. Accordingly, the Court is now concerned solely with the validity of those provisions of testator's will creating and providing for the operation of the non-marital trust.
[2] In view of the conclusions hereinafter reached it will be unnecessary to consider the alternative provisions outlined by the testator and the effect thereon of Frederic B. Asche, Jr.'s, renunciation.
[3] This principle would seem to negative any force to be attributed to the recitations and instructions of Article Fourth.